# UNITED STATES DISTRICT COURT
# IN THE SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **RICHARD VASQUEZ,** | § | |
| **Petitioner** | § | |
| **v.** | § | |
| | § | **Civ. No. CC-05-059** |
| **NATHANIEL QUARTERMAN,** | § | |
| **Director, Texas Department of** | § | |
| **Criminal Justice—Correctional** | § | |
| **Institutions Division** | § | |
| **Respondent.** | § | |

## MEMORANDUM AND ORDER

A Nueces County jury convicted Petitioner Richard Vasquez of the capital murder of four-year-old Miranda Lopez and sentenced him to death. His conviction and sentence were twice upheld by the Texas Court of Criminal Appeals—on direct appeal and in state habeas corpus proceedings. *Vasquez v. State*, No. 73,461 (Tex. Crim. App. Oct. 3, 2001); *Ex parte Vasquez*, No. 59,201-01 (Tex. Crim. App. Jan. 26, 2005). Vasquez is now before this federal court, alleging constitutional violations in his trial, sentencing and appeal, and seeks a writ of habeas corpus.

Anyone convicted in state court and in custody has the right to challenge the constitutionality of that detention by seeking a writ of habeas corpus from a federal court. *Danforth v. Minnesota*, 128 S.Ct. 1029, 1036 (2008). Congress, however, limited the power of the federal courts to grant relief to habeas petitioners when it passed the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"). 28 U.S.C. § 2254(d) (2000). Under the AEDPA, a state prisoner can obtain relief with respect to any claim adjudicated on the merits in State court proceedings only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d). *Williams v. Taylor*, 120 S.Ct. 1495, 1519 (2000).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 120 S.Ct. at 1519. The "unreasonable application" clause requires the federal courts to inquire "whether the state court's application of clearly established federal law was objectively unreasonable," not merely incorrect. *Id.* at 1521; *Smith v. Quarterman*, 515 F.3d 392, 399 (5th Cir. 2008). "A state court unreasonably applies established federal law when it correctly identifies the governing precedent but unreasonably applies it to the facts of a particular case." *Smith v. Quarterman*, 515 F.3d at 399. A petitioner bears the burden of demonstrating the unreasonableness of state factual findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Vasquez raises three claims of ineffective assistance of counsel in violation of the Sixth Amendment. First, he asserts that his trial counsel failed to adequately

rebut evidence that he sexually assaulted Miranda Lopez. Vasquez next argues that his counsel's investigation and presentation of mitigation evidence was deficient. Finally, Vasquez argues that his appellate counsel was ineffective due to the alleged conflict of interest created by that attorney's representation of the State of Texas in two unrelated special prosecutions.

Respondent Nathaniel Quarterman, who has custody of petitioner and is charged with the duty to discharge the sentence of the jury, seeks summary judgment. "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). For ordinary summary judgment motions, the district court construes the facts in the case in the light most favorable to the non-moving party. However, where a habeas petitioner's factual allegations have been adversely resolved by express or implicit findings of state courts, the prisoner must demonstrate by clear and convincing evidence that the presumption of correctness established by 28 U.S.C. § 2254(e)(1) should not apply. Otherwise, it is inappropriate for the facts of a case to be resolved in the petitioner's favor. *See Marshall v. Lonberger*, 103 S.Ct. 843, 849-50 (1983); *Foster v. Johnson*, 293 F.3d 766, 777 (5th Cir. 2002). Consequently, where the Texas state courts have determined facts, this Court is bound by such findings unless an exception to 28 U.S.C. § 2254 applies.

With regard to the claim of ineffective assistance of counsel at the guilt/innocence phase of the trial, the Court finds that the state court's decision

neither "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law," nor "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). On Vasquez's second claim, the Court finds that the state court's determination that Vasquez's counsel reasonably investigated Vasquez's background was an "unreasonable determination of facts." *Id.* However, the Court finds that the state court's conclusion that no prejudice resulted from omitted mitigation was not an "unreasonable application" of federal law. *Id.* The Court finds that the state court's rejection of Vasquez's third claim—ineffective assistance of appellate counsel— was not "contrary to" or an "unreasonable application of" clearly established federal law. *Id.* Having considered the petition, the summary judgment motion, the state court record, and applicable law, the Court therefore GRANTS respondent's Motion for Summary Judgment and DENIES Vasquez's petition.

I. <u>Background Facts and Proceedings</u>

The facts, as set forth by the Texas Court of Criminal Appeals, are as follows:

> Vasquez was charged with intentionally or knowingly causing the death of Miranda Lopez by striking her on the head with his hand. During the guilt/innocence stage, the evidence showed that at the time of the offense, Vasquez, who was eighteen years old, was living with his parents; his girlfriend, Brenda Lopez; their four-month-old child, Meagan; and Brenda's four-year-old child, Miranda. Vasquez had a serious addiction to heroin and cocaine which had begun when he was thirteen. Although his adoptive parents made numerous

efforts to help him with his drug problem, Vasquez remained clean only for a short period of time and invariably reverted to his drug use.

By March 1998, Vasquez and Brenda had become so addicted to drugs that, according to Vasquez, they stopped caring about themselves, the children, or anything else except drugs. They would leave the children anywhere so that they could go out and steal things to sell in order to buy more drugs. Vasquez would become infuriated when the drugs ran out and he did not have any more money to feed his habit.

According to Vasquez, he and Brenda argued throughout the night of March 4th, during which time he injected himself with heroin and cocaine before falling asleep in the early hours of March 5th. Vasquez injected himself with heroin again at 10:30 a.m. before taking Brenda to work between 11 a.m. and noon. Vasquez drove Brenda to work while the children sat in the back seat of the car. On the way, Vasquez got angry with Brenda because he had to watch the children and would not be able to go steal more things to sell for drugs.

After Vasquez and the children returned home, sometime during the late morning, Vasquez's neighbor saw a child Miranda's age playing in the backyard. After about 10-15 minutes, she heard a loud, angry voice coming from Vasquez's door. She saw Vasquez standing there and heard him say to the girl in Spanish, "You're going to get it, stupid." Vasquez denied that this incident ever occurred.

According to Vasquez's testimony at trial, after he dropped Brenda off, he and the children returned home and Vasquez needed a fix. He called Brenda to ask her where the heroin was and Brenda would not tell him. This angered Vasquez and although Vasquez acknowledged that Miranda was not doing anything wrong, he struck her in the head. He could not say how many times he hit her. He then called Brenda again who told him where the drugs were and he injected another round of heroin. He told Miranda to go get a stool from his parents' room and brush her teeth. When Miranda came back with the stool, Vasquez claimed that Miranda fell down. He put toothpaste on her toothbrush and left the room. When he came back, Miranda was face down in the sink. He repeatedly tried to make her stand, but she kept falling down. He then put her on his parents' bed and called "911" around 1:30 p.m., telling the dispatcher that

Miranda was choking. When the deputy constable and the emergency medical technicians arrived at the house, Vasquez said that Miranda had fallen off a wooden stood and hit her head. No wooden stool was in the area, although one was later found next to the bed where Vasquez placed Miranda. Miranda had blood on her nose and mouth which Vasquez claimed was a result of Miranda biting him when he put his fingers in her mouth to prevent her from swallowing her tongue. The paramedics also noted that Miranda had a bump on the back of her head, noticeable bruises of various stages on her back, and bruising around her eyes which indicated a possible head injury. Miranda was taken to the hospital. In the meantime, Vasquez called Brenda and told her that Miranda had fallen off of a stool and hit her head. He picked up Brenda at work and they headed to the hospital—both injecting heroin on the way.

It was determined by Dr. Michael Burke, a paramedic neurosurgeon who performed brain surgery on Miranda, that Miranda suffered from trauma to the head. He testified that her brain injuries were equivalent to those she would have sustained had she been ejected from a car traveling 65 m.p.h. Burke's final diagnosis was that Miranda suffered severe brain injury from child abuse. Leann Box, a sexual assault nurse, examined Miranda at 7 p.m. and noted that she had extensive bruising on her head, face, chest, hips, pelvic region, genitalia area, ankle, thigh, shoulder, back, and arms. Some of these bruises were formed from injuries made within the previous twelve to twenty-four hours. The bruising on Miranda's hips was consistent with injuries that could be caused from being held from behind while being sexually assaulted.

Box also performed a detailed genital exam. Miranda had multiple abrasions and tears in her genital-anal region. Many of the tears were the result of injuries that had occurred no more than twelve hours earlier. Miranda had a two-centimeter tear between her anus and labia minora that was approximately one half-centimeter deep (just short of muscle tissue). In over 200 sexual assault examinations, Box had never seen a tear this thick. This type of tear would be caused from a great deal of force and would have likely bled a great deal. Box testified that the tear was not bloody when she examined Miranda, which led her to believe that it had been cleaned. Although extremely painful, rubbing alcohol and pressure could have stopped the bleeding.

Vasquez was arrested and crime scene technicians photographed him, noting the bruising on his hand, fresh cuts to his thumb and finger, and needle marks on his arms. At Vasquez's home, officers and the crime scene technicians found blood on the wall and shower curtain in the bathroom where Miranda allegedly fell. There was a blood-stained t-shirt and coveralls were found in a clothes hamper, which Vasquez's father said he put there after finding them in the house. After searching the garbage, the crime scene personnel found two syringes, the cap to a tube of toothpaste, a hair brush, a long black hair, toilet paper with blood on it, and tissue paper that appeared to be saturated with rubbing alcohol inside of a garbage can in a plastic bag. Vasquez's father testified that he had taken the trash out of the bathroom and put it in the garbage can.

A pediatrician who helped establish a clinic for examining sexual assault victims testified as an expert witness. He summarized his findings by stating that in his twenty hears of practice, "This is really one of the most severe sexual assaults that I have seen in my career." Additionally, the Nueces County Medical Examiner testified that an analysis of Miranda's blood indicated a potentially lethal amount of cocaine in her system. It was double the lethal amount for an adult. The doctor could not determine how the cocaine got into Miranda's body.

Vasquez could not explain the bruising, genital-anal injuries, or the cocaine. He denied sexually assaulting Miranda or giving her drugs. But Vasquez did admit that he was the only adult in the house that morning and that he had struck Miranda in the head.

*Vasquez v. State*, No. 73,461 at 3-7.

II.   Analysis

Vasquez raises two claims of ineffective assistance of trial counsel and one claim of ineffective assistance of appellate counsel. To prevail on a claim for ineffective assistance of counsel, petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) that "the deficient performance prejudiced the defense. This requires showing that

counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 104 S.Ct. 2052, 2064 (1984).

A.  *Failure to Investigate and Counter the State's Evidence of Sexual Assault*

Vasquez alleges that he received ineffective assistance from his trial counsel because they failed to adequately investigate and counter the State's evidence of sexual assault. Countering the evidence of sexual assault was critical to the defense, both because the evidence was inflammatory to the jury and because the State used the sexual assault as evidence of Vasquez's *mens rea.* The state trial court considered this claim and, finding adversely to the petitioner, denied the writ of habeas corpus. State Court Findings of Fact and Conclusions of Law (May 19, 2004) (attached as appendix A to this opinion). The Texas Court of Criminal Appeals affirmed. *Ex parte Vasquez*, No. 59,201-01.

Although Vasquez was never indicted for rape or sexual assault, the State presented evidence, including several expert witnesses, and argument on this issue. The prosecution heavily relied upon this evidence, as it was entitled to do, to show Vasquez's violent, intentional state of mind. Vasquez asserts that trial counsel should have explored inadequacies in the Corpus Christi crime lab, tested the DNA of other relatives to determine whether they too matched any of the samples taken, and challenged the admissibility of the DNA evidence presented. Vasquez argues that his attorneys should have presented a DNA expert to counter the State's expert,

Dr. Nguyen. Vasquez further argues that counsel failed to adequately present evidence that Miranda had suffered a straddle injury, rather than a sexual assault.

Vasquez demonstrates neither the deficiency of performance nor the prejudice required by *Strickland* for a showing of ineffective assistance of counsel. The state court's rejection of this claim of ineffective assistance of counsel was neither "contrary to" nor an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1).

1.    DNA Evidence

During the state habeas proceedings, the trial court considered the DNA evidence admitted in Vasquez's case and found that,

> Vasquez's trial attorneys reasonably decided not to challenge the State's DNA evidence or hire an independent DNA expert because the DNA evidence offered by the State was generally neutral and did not tend to prove anything more than Vasquez's own admission that he had beaten the victim to death and that both he and the victim were bleeding at the time, and because the DNA evidence may even have helped the defense by showing that none of Vasquez's semen was found in the victim or on her clothes.

Appendix A at 9. At trial, the State's DNA expert, Dr. Nguyen, testified that the fingernail scrapings taken from Miranda revealed no evidence of a struggle with Vasquez. 35 Tr. 141.[1]  He further explained that no semen was found on or inside of the victim's body. 35 Tr. 168-69. The defense highlighted this testimony in its closing arguments. 36 Tr. 28. The bloodstains about which Nguyen testified were consistent with both the State's account of events (a violent assault) and the

_____

[1] "Tr." refers to the transcript of Richard Vasquez's trial. "H" refers to transcripts of the state habeas corpus proceedings.

defendant's explanation (Miranda's fall and Vasquez's wounded hand). Therefore, the DNA evidence that Vasquez's trial counsel allegedly failed to rebut was largely favorable to the defense and otherwise equivocal. Vasquez failed to prove by clear and convincing evidence that the state court's finding was unreasonable. 28 U.S.C. 2254(e).

Vasquez argues that counsel should have presented an expert to rebut Nguyen's assertion that semen could be washed away. Even were defense counsel deficient in failing to present such evidence, however, petitioner fails to demonstrate a reasonable probability that the omission prejudiced the defendant. During state habeas proceedings, the defense presented the testimony of Dr. Libby, a DNA expert, that semen is detectable even after washing. At trial, two of the State's experts, Nurse Box and Dr. Lukefahr, offered various explanations for the common absence of semen in cases of sexual assault. Vasquez also testified to his explanation—that no sexual assault occurred. With alternative explanations before the jury, the petitioner has not demonstrated a reasonable probability that undermining one of them would have caused a different result.

2.    Straddle Injury

Vasquez avers that his trial counsel deficiently failed to offer evidence of the alternative theory that Miranda suffered a straddle injury, rather than a sexual assault and argues that a credible alternative explanation could have blunted the effects of the inflammatory evidence. Vasquez first urges the testimony of Dr. Bruce Henderson that Miranda might have had a straddle injury. Vasquez,

however, fails to demonstrate that Dr. Henderson would have even been willing to testify and therefore falls short of the necessary showing. *McCullar v. Scott*, 58 F.3d 635, 635 (5th Cir. 1995) ("In order for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial."). Furthermore, the jury heard Henderson's conclusion when defense counsel cross-examined Dr. White, who reviewed Henderson's records. Therefore Vasquez demonstrates no prejudice from the omission of the testimony.

Vasquez does assert that Dr. Randall Frost, an assistant medical examiner, was prepared to testify. The state trial court found during the habeas proceedings that "Vasquez failed to offer any evidence to show that Dr. Randall Frost's testimony would have aided the defense in any way." Appendix A at 8. Frost's speculative testimony, that the injuries *could* have been caused by a straddle injury, would not likely have overcome the testimony of the State's two witnesses, both experts in sexual assault. Petitioner fails to demonstrate by clear and convincing evidence that the state court's finding is unreasonable. 28 U.S.C. § 2254(e).

Vasquez also claims that counsel should have offered the testimony of family members that they saw Miranda playing on an exercise bicycle that could have caused a straddle injury. The state court found that "Vasquez failed to offer any evidence from family members to show that they could have testified to anything other than speculative suggestions." Appendix A at 8. Given the depth of

the abrasions, these injuries would have bled. Such an injury would have occurred in the twelve hours prior to her death, when Miranda was in the care of Richard Vasquez or another member of the family who would have noticed profuse bleeding. Vasquez does not assert, however, that any witness could testify that they had seen Miranda fall, heard her cry or complain of an injury, noticed blood or the abrasion when they bathed her, or otherwise present any direct evidence that Miranda sustained a straddle injury. Vasquez, therefore, offers no witness who could directly confront the testimony of two experts, Nurse Box and Dr. Lukefahr, that Miranda suffered a sexual assault. Petitioner fails to demonstrate by clear and convincing evidence that the state court's finding is unreasonable. 28 U.S.C. § 2254(e). Vasquez fails to show any prejudice resulting from the omission of such inconclusive testimony.

3.      Cumulative Prejudice

Petitioner fails to meet the required showing for the evidence specifically discussed above. Furthermore, even if defense counsel had succeeded in parrying *all* evidence of sexual assault, Vasquez fails to show a reasonable probability of a different outcome. Contrary to Vasquez's assertion, the evidence of sexual assault was not critical to the jury's finding of intent to kill. An expert testified that Miranda's severe head injuries were equivalent to those caused by a 65 m.p.h. car crash. She had bruising throughout her body. Medical testimony suggested that Vasquez lied to doctors and the 911 operator about the nature of Miranda's injuries. She had twice the lethal dose of cocaine in her system, which a drug

addict above others would understand. 36 Tr. 20. All of this evidence provided substantial basis for the jury's *mens rea* determination. Vasquez, therefore, fails to demonstrate a reasonable probability that in the absence of the evidence of sexual assault, a jury would have found him not guilty of murder.

B. *Failure to Investigate and Present Available Mitigation Evidence*

Vasquez next asserts that his trial counsel failed to adequately investigate and present available mitigation evidence. In order to determine whether Vasquez received ineffective assistance of counsel, the court must determine whether "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 104 S.Ct. at 2063-64. The American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases ("ABA Guidelines") state that counsel for a capital defendant should make "efforts to discover all reasonably available mitigating evidence." ABA Guidelines 11.4.1 (1989) (attached as Appendix B to this opinion).[2] Although the ABA Guidelines are not mandatory, they are the only standards of reasonable practice that either side has offered the Court. Furthermore, the Supreme Court has repeatedly relied upon the ABA Guidelines to inform its determination of the "objective standard of reasonableness" set forth in *Strickland v. Washington*. *Rompilla v. Beard*, 125 S.Ct. 2456, 2466 n. 7 (2005) (ABA Guidelines are "standards to which we [the Supreme Court] have long referred as guidelines for determining what is

---

[2] The 1989 Guidelines were superseded in 2003, but the 1989 version was still in effect at the time of Vasquez's trial.

reasonable"); *Wiggens v. Smith*, 123 S.Ct. 2527, 2536-37 (2003); *Strickland*, 104 S.Ct. 2052 (1984). The Fifth Circuit has similarly relied upon the ABA Guidelines in *Sonnier v. Quarterman.* 476 F.3d 349, 357-58 (5th Cir. 2007).

       1.  Evidence on Vasquez's Family and Social Background

       a.  Performance

Vasquez argues that his attorneys failed to adequately investigate his social history to present as mitigation evidence in the punishment phase of his trial. The Supreme Court has repeatedly acknowledged the importance of presenting a defendant's childhood and family background as mitigation evidence. *See, e.g., Rompilla v. Beard*, 125 S.Ct. 2456; *Wiggens v. Smith*, 123 S.Ct. 2527; *Williams v. Taylor*, 120 S.Ct. 1495. The Supreme Court has explained that "evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." *Penry v. Lynaugh*, 109 S.Ct. 2934, 2947 (1989) (quoting *California v. Brown*, 107 S.Ct. 837, 841 (1987) (O'Connor, J., concurring)). Indeed, the Fifth Circuit has acknowledged that "[g]enerally accepted standards of competence require that counsel conduct an investigation into [a defendant's] background." *Smith v. Quarterman*, 515 F.3d 392, 405 (5th Cir. 2008).

For example, the Supreme Court in *Williams v. Taylor* found deficient investigation where counsel did not begin preparing for mitigation until a week

before the trial and failed to uncover available records that would have demonstrated defendant's "nightmarish childhood." *Williams v. Taylor*, 120 S.Ct. at 1514. In *Wiggens*, the Supreme Court found the mitigation investigation unreasonable where defense counsel relied solely upon three sources—an IQ test, the presentence investigation report and Baltimore's department of social service records. Wiggens's attorneys failed to hire a mitigation specialist or interview witnesses and therefore failed to discover his history of severe abuse. *Wiggens*, 123 S.Ct. at 2537. The Fifth Circuit has similarly found deficient investigation where defense counsel, at defendant's request, failed to interview potential mitigation witnesses in the defendant's family. *Sonnier v. Quarterman*, 476 F.3d 349. (5th Cir. 2007).

Vasquez's counsel claimed that they made a strategic decision to present Vasquez as coming from a good home. It is true that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 2535. *See also, Burger v. Kemp*, 107 S.Ct. 3114 (1987) (counsel reasonably decided not to present evidence of family background after several interviews with defendant's mother, a family friend and former army colleagues); *Smith v. Quarterman*, 515 F.3d at 405 (finding reasonable investigation where counsel interviewed numerous family members and childhood acquaintances). However, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Wiggens*, 123 S.Ct. at 2535

(quoting *Williams v. Taylor*, 120 S.Ct. 1495). The *Wiggens* Court found the curtailment of investigation especially unreasonable where the limited records suggested a troubled childhood that should have been uncovered. *Id.* at 2538 ("In assessing the reasonableness of an attorney's investigation, . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.").

Thus, like the Court in *Wiggens*, this Court must focus on whether the underlying the allegedly strategic choice "was itself reasonable." *Id.* at 2536. The trial court made the following findings of fact and conclusions of law:

> Vasquez's trial attorneys reasonably determined that pursuing further evidence of Vasquez's social history was unnecessary to make an informed choice among possible defenses, and their failure to investigate further the negative influence that Vasquez's biological parents played in his early years resulted from a reasoned strategic judgment and not from inattention. . . .
>
> Vasquez's trial attorneys adequately investigated mitigating evidence concerning his social history, but exercised sound trial strategy in declining to present such evidence at trial, since it could have prejudiced his case on punishment issues.

Appendix A at 2, 20. This Court must determine, therefore, whether petitioner has demonstrated by clear and convincing evidence that the state court's finding was unreasonable and petitioner's attorneys failed to conduct an objectively reasonable investigation.

None of Vasquez's attorneys interviewed his biological mother or father, both of whom were willing to testify on Vasquez's behalf. 2 H. 219, 3 H. 38, 8 H.

Ex. 23. Juan Antonio Vasquez and Olivia Vasquez, Richard Vasquez's uncle and aunt, stated in affidavits that petitioner's attorneys barely spoke to them before their testimony in the mitigation case and never prepared them to testify. 8 H. Ex. 21, 22. Defense counsel testified that they hired no mitigation specialist to assist them in preparing the penalty phase of the trial, though they felt that the trial court would have approved funds for such an expert. 2 H. 221, 3 H. 55, 113-14. Indeed, Mr. Collina, the attorney responsible for petitioner's mitigation case, stated that he thought mitigation experts were only useful for defendants with "no family." 3 H. 54. Collina stated that because Vasquez "had a loving family," no mitigation expert was necessary. 3 H. 55.

Had Vasquez's attorneys interviewed his parents and sister, they would have developed an entirely different understanding of his extremely troubled childhood. Marta Vasquez, petitioner's biological mother, drank throughout her pregnancy and continued to drink daily during Vasquez's youth. 8 H. Ex. 23. Ricardo Vasquez, the petitioner's biological father, testified that he began using cocaine and heroin at the age of fourteen and became addicted. 3 H. 116. He has been in prison frequently since that time. 3 H. 117. From the time that Richard Vasquez was a baby, his father took him to buy drugs, and used drugs in his presence. Richard also saw his father selling drugs from the front porch of their home. Ricardo brought Richard with him to rob houses for drug money. He even taught Richard to sell heroin. Richard watched his father get arrested.

Collina dismissed the importance of Vasquez's biological parents, claiming they were involved in his life only "at a very young age." 3 H. 77. However, Ricardo Vasquez affirmed that even after Richard was adopted they continued to spend time together. 3 H. 123, 127. Richard also continued to spend time with his mother Marta into his teenage years. Marta lived with a drug addict and dealer who also used drugs with Richard. 3 H. 126.

Ricardo Vasquez further explained the history of drug abuse and violence that permeated their family. One of Richard's uncles died of an overdose, while two others were murdered in drug-related violence. Richard's sister Brenda has also been addicted to cocaine and heroin, and her boyfriend used drugs with Richard. 8 H. Ex. 21, 25. Several other family members, including Richard's grandparents and great-grandparents, had drug and alcohol addictions. 8 H. Ex. 21.

Mr. Collina billed for only twenty hours of preparation for trial. 3 H. 107. At the state habeas proceedings, defense counsel testified that they did not have copies of his juvenile probation file or a complete set of medical records. 3 H. 75-76. Although they made minimal use of an investigator for the guilt/innocence phase, he did not work on the mitigation case. 3 H. 23. The defense used less than half of the fees approved by the Court for investigation. 3 H. 23.

Vasquez's counsel conducted virtually no investigation of a mitigation case. They never spoke to Vasquez's biological parents and only very briefly with his adoptive parents. Like the attorneys in *Sonnier*, "the trial attorneys did not talk to [petitioner's] family and acquaintances at the length or depth required for

[mitigation] purposes." *Sonnier*, 476 F.3d at 357-58. They failed to hire a mitigation specialist, or even to use their court-funded investigator to speak with Vasquez's family. Vasquez's attorneys never had an accurate understanding of even the vague outlines of his childhood. With only the exception of his aunt and uncle, everyone in Vasquez's family suffered from drug and alcohol addictions. His family's whole way of life centered on addiction and crime. He was initiated into drugs and crime by not only his father but by almost every role model he had.

What little petitioner's attorneys did know should have led them to do additional investigation. Upon the suggestion of a troubled childhood, a reasonable attorney would have had at least a brief conversation with the biological parents to determine whether they could offer any important mitigation. Such a conversation would have quickly disproved counsel's unfounded preconception of the biological parents' minimal role in Richard's life. Instead, Vasquez's counsel failed to follow up on the modicum of background information they had. Indeed, Collina's justification for the mitigation strategy—Vasquez's loving family and the minimal role of his biological parents in his life—suggests that their "strategy" had little, if any, factual basis, and that the meager mitigation evidence presented was the result of "inattention, not reasoned strategic judgment." *Wiggens*, 123 S.Ct. at 2537.

For the reasons described above, the Court concludes that Vasquez's attorneys failed to perform an objectively reasonable investigation of mitigating evidence. Petitioner has demonstrated by clear and convincing evidence that the

state court's factual finding was unreasonable. 28 U.S.C. § 2254(e). The state court's conclusion that there was no deficiency was an "unreasonable application" of federal law, as clearly established by the Supreme Court in *Wiggens v. Smith*, published before the state court's findings of fact and conclusions of law. 123 S.Ct. 2527.

  b.  Prejudice

Because the Court finds that Vasquez's counsel "fell below an objective standard of reasonableness," the Court must now consider the second prong of *Strickland*—whether "the deficient performance prejudiced the defense." *Strickland v. Washington*, 104 S.Ct. at 2064. In order to meet the second prong of *Strickland*, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2068.

In evaluating a claim of ineffective assistance of counsel at the sentencing phase of a capital trial, the reviewing court considers, "whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 2069. The Supreme Court has found prejudice from failure to uncover mitigation when the available evidence was truly horrific, including extreme physical abuse and neglect. *See, e.g., Williams v. Taylor*, 120 S.Ct. 1495, 1514 (defendant's parents had been imprisoned for criminal neglect); *Rompilla v.*

*Beard*, 125 S.Ct. 2456, 2468-69 (abuse included, *inter alia*, "his father . . . beat him when he was young with his hands, fists, leather straps, belts and sticks . . . His father locked Rompilla and his brother Richard in a small wire mesh dog pen that was filthy and excrement-filled . . ."); *Wiggens*, 123 S.Ct. at 2542 ("physical torment, sexual molestation, and repeated rape" at the hands of both defendant's biological mother and his subsequent foster parents). However, prejudice from omitted mitigation is especially hard to establish when the evidence at the guilt phase of trial is overwhelming or when the details of the crime are especially gruesome. *Id.* at 2057; *Jones v. Johnson*, 171 F.3d 270 (5th Cir. 1999); *Russel v. Lynaugh*, 892 F.2d 1205 (5th Cir. 1989).

The trial court found that "had the jury been confronted with the mitigating evidence put forward by Vasquez in connection with the [state habeas proceedings], there is no reasonable probability that it would have resulted in a different sentence." Appendix A at 12. At trial, it was undisputed that four-year-old Miranda died while in Vasquez's sole care from a blow he delivered to her head. One expert stated that her injuries were equivalent to a 65 m.p.h. car accident. She had a lethal quantity of cocaine in her system. There was significant evidence of some type of sexual assault. There was also evidence of a history of abuse of the child. It is obviously difficult for the Court to predict what might influence a jury, but this Court finds that Vasquez's background, though terrible, does not reach the compelling level found sufficient to constitute prejudice by the Supreme Court. In the face of these gruesome facts, against such a young victim,

Vasquez fails to demonstrate by clear and convincing evidence that the state court's finding on this point was unreasonable. 28 U.S.C. § 2254(e). Petitioner has failed to demonstrate the prejudice required by *Strickland.*

2.  Evidence of Various Disorders

Vasquez further argues that during the punishment phase of the trial, counsel should have presented evidence that he suffers various disorders, including post traumatic stress disorder, attention deficit disorder, poly-substance dependence, fetal alcohol syndrome, learning disabilities, and a borderline IQ. Defense counsel did have reports from two doctors, Dr. Bonikowski, a neurologist, and Dr. Estrada, a psychologist. Vasquez now urges that his attorneys should have pursued further testing, including an MRI and an EEG.

Regardless of whether defense counsel should have pursued these additional tests, the Court finds no prejudice from the omission of any such evidence. Evidence of mental and neurological conditions is double-edged: while it could elicit the jury's sympathy, it could equally bolster the State's claims of future dangerousness by showing poor ability to control impulses and learn from past mistakes. *See, e.g. Penry v. Lynaugh*, 109 S.Ct. 2934, 2938-39 (1989) (evidence of mental retardation could be both mitigating and aggravating). The Fifth Circuit counsels deference to strategic decisions not to present such double-edged mitigation evidence. *See, e.g. Martinez v. Quarterman*, 481 F.3d 249, 254 (5th Cir. 2007) (mental disorder causing "savage and uncontrolled aggressiveness"

was double-edged and counsel reasonably decided not to pursue it); *Rector v. Johnson*, 120 F.3d 551 (5th Cir. 1997) ("[A] tactical decision not to pursue and present potential mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable."); *Boyle v. Johnson*, 93 F.3d 180 (5th Cir. 1996) (evidence of mental illness was double-edged).

Indeed, the opinions of Dr. Weinstein presented by petitioner epitomize the problem. After reviewing documentation and performing numerous tests, Weinstein diagnosed Vasquez with the disorders listed above. The effects of these disorders, as he described them, include "relevant limitations on his ability to regulate his behavior and emotions," inability to "regulate his response" to overwhelming circumstances, and the tendency to "act[] impulsively and without the awareness of his behavior." 8 H. Ex. 20. While this evaluation certainly helps to explain Vasquez's violent outburst against Miranda, it also suggests that Vasquez would continue to be a danger due to his inability to moderate his behavior.

The Court must again consider whether there is a reasonable probability that with the benefit of this evidence, the sentencer "would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 104 S.Ct. at 2069. The state court found that presenting evidence of mental impairment would have been "ineffective." Appendix A at 7. Petitioner fails to demonstrate by clear and convincing evidence that the state court's finding is unreasonable. 28 U.S.C. §2254(e). Given the double-edged nature of this

evidence, the overwhelming evidence of guilt and the brutality discussed above, the Court finds that Vasquez fails to demonstrate a reasonable probability that the mitigating evidence would have altered the jury's balancing of aggravating and mitigating factors. The State Court's rejection of this claim was neither "contrary to" nor an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1).

C. *Appellate Counsel's Conflict of Interest*

Finally, Vasquez argues that he received ineffective assistance of appellate counsel due to a conflict of interest. Attorney Grant Jones represented Vasquez in his direct appeal, while he represented the State of Texas in two capital postconviction cases under appointment as a special prosecutor for Nueces County.

A defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under State law." *Evitts v. Lucey*, 105 S.Ct. 830, 835-36 (1985). The *Strickland* two-prong standard applies to claims of ineffective assistance of appellate counsel. *Duhamel v. Collins*, 955 F.2d 962, 967 (5th Cir. 1992). To demonstrate ineffective assistance, petitioner must demonstrate "that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 100 S.Ct. 1708, 1718 (1980) (finding effective assistance where attorneys representing multiple defendants presented a consistent innocence defense for each, causing no actual conflict).

There is apparently no Supreme Court or Fifth Circuit precedent factually similar to this case. Vasquez cites a single New York State decision in support of his claim that the representation presents an actual conflict of interest. *People v. Cooper*, 156 Misc.2d 483, 487, 93 N.Y.S.2d 733, 736 (Erie County 1992).[3] In that case, the defendant's counsel simultaneously served as a part-time prosecutor in the county where defendant was prosecuted. The County Court found an "obvious and actual conflict of interest" and also emphasized the "appearance of impropriety." *Id.* at 487-88. However, the decision turned largely on ethical rules and opinions of the New York State Bar Association Professional Ethics Committee. *Id.* Furthermore, the attorney in *Cooper*, served as a part-time prosecutor for the County, a role that suggests an ongoing relationship with the prosecutor's office. Mr. Jones, on the other hand, served as a special prosecutor, which is an appointment made only for a particular case. *State v. Rosenbaum*, 852 S.W.2d 525, 529 (Tex. Crim. App. 1993) (Clinton, J., concurring).

The Court finds more persuasive the opinion of the Seventh Circuit in *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). In *Small*, the petitioner argued that he received ineffective assistance of trial counsel because his court-appointed lawyer also served as a special prosecutor in an unrelated case. The Seventh Circuit found no actual conflict of interest:

---

[3] Vasquez's additional citations are factually inapposite. *Cuyler v. Sullivan*, 100 S.Ct. 1708 (1980) (representation of multiple defendants); *Holloway v. Arkansas*, 98 S.Ct. 1173 (1978) (same); *Castillo v. Estelle*, 504 F.2d 1243 (5th Cir. 1974) (simultaneous representation of defendant and key state witness); *Zuck v. Alabama*, 588 F.2d 436 (5th Cir. 1979) (simultaneous representation of prosecutor in an unrelated civil matter).

> [The petition] contains no suggestion that his attorney "actively represented conflicting interests." All it alleges is that his attorney served as a special prosecutor in an unrelated murder. More is necessary . . . . [W]e do not find a conflict of interest where there exist separate and distinct criminal cases involving neither the same parties nor facts.

*Id.* at 417. Like the attorney in *Small*, Jones undertook "separate and distinct criminal cases involving neither the same parties nor facts." Therefore, Vasquez fails to demonstrate any actual conflict of interest.

Vasquez fails to prove an actual conflict, and he also fails to demonstrate that any conflict adversely affected his lawyer's performance. *Id.* ("Although prejudice is presumed when counsel is burdened by an actual conflict of interest, it may be presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance."). Vasquez does not assert that had he known of Mr. Jones's conflict he would have requested different counsel. Further, while petitioner claims a "pro-state bias" in the appellate briefing and argues that several "straw men" arguments were included, Vasquez identifies no single claim that appellate counsel neglected to raise on appeal. The State Court's rejection of this claim of ineffective assistance of counsel was neither "contrary to" nor an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1).

III.   Certificate of Appealability

Vasquez does not request a certificate of appealability ("COA"), but this Court may *sua sponte* determine whether he is entitled to such relief. *See Alexander v. Johnson*, 211 895, 898 (5th Cir. 2000) ("The statute does not require that a petitioner move for a COA; it merely states that an appeal may not be taken without a certificate of appealability having been issued.") The AEDPA dictates an issue-by-issue consideration of appealability. *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997). To obtain a COA, a petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S.Ct. 1595, 1603-04 (2000).

This Court has carefully considered each of Vasquez's claims and finds that his claim of ineffectiveness in addressing evidence of sexual assault is foreclosed by clear precedent. This Court concludes that under such precedents, Vasquez has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Court finds, however, that reasonable jurists could reach differing conclusions on the effect of Vasquez's counsel's failure to adequately investigate his family and personal history.

Because no Fifth Circuit or Supreme Court case law addresses Vasquez's claim of ineffective assistance of appellate counsel, reasonable jurists could also disagree whether the facts give rise to an actual conflict of interest. Therefore, this Court concludes that Vasquez is entitled to a COA on his claims that he received ineffective assistance during the mitigation and appellate stages of his case.

IV. <u>Order</u>

     For the foregoing reasons, it is ORDERED as follows:

     1.  Respondent Nathaniel Quarterman's Motion for Summary Judgment is GRANTED;

     2.  Petitioner Richard Vasquez's Petition for Writ of Habeas Corpus is DENIED; and

     3.  A Certificate of Appealability shall issue as to Vasquez's claim that he received ineffective assistance of counsel during the mitigation and appellate stages of his case.

The Clerk shall notify all parties and provide them with a true copy of this Order.

     SIGNED at Corpus Christi, Texas on this 28th day of March, 2008.

_____
HAYDEN HEAD
CHIEF JUDGE