IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

RICHARD VASQUEZ,        §
       §
      Petitioner,       §
       §
v.        §
       §     NO. C-05-59
NATHANIEL QUARTERMAN,     §     (Death Penalty Case)
DIRECTOR,        §
TEXAS DEPARTMENT OF CRIMINAL     §
JUSTICE, CORRECTIONAL        §
INSTITUTIONS DIVISION,

      Respondent.

## PETITIONER'S MOTION FOR RECONSIDERATION

Pursuant to Federal Rule of Civil Procedure 59(e), Petitioner Richard Vasquez ("Petitioner" or "Vasquez") files this Motion for Reconsideration asking the Court to alter or amend its March 28, 2008 Memorandum and Order as well as its Final Judgment granting Respondent Quarterman's Motion for Summary Judgment and denying Petitioner's Petition for Writ of Habeas Corpus.

### INTRODUCTION

The Court determined that Petitioner's trial counsel failed to provide effective assistance of counsel due to counsel's failure to investigate and present available mitigation evidence related to Petitioner's terrible and traumatic childhood. However, the Court ruled that Petitioner was not prejudiced by trial counsel's ineffective assistance. Petitioner seeks reconsideration of the Court's decision for the following reasons:

    1.     Petitioner respectfully asserts the Court applied the wrong standard for determining prejudice. The Court presumed a standardized level of severity that undiscovered mitigation evidence must surpass to be deemed prejudicial. The Supreme Court and Texas law do not create such a requirement and instead mandate the

consideration of how the undiscovered evidence, taken as a whole, would likely change the jury's perspective of the defendant's moral culpability;

2.    The Court relied upon Fifth Circuit decisions regarding Texas trials that predate and thus do not take into account the significant changes regarding the consideration of mitigating evidence of mental impairment made in the case of *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934 (1989) and its progeny or the codification of those changes in the Texas Code of Criminal Procedure art. 37.071; and

3.    This Court and the state court did not analyze the considerable strength of the mitigation evidence Petitioner's trial counsel failed to investigate and present in this case, particularly as that mitigating background and mental deficiency evidence relates directly to the Petitioner's moral culpability for his criminal actions.

When the uninvestigated mitigation evidence is analyzed by the appropriate standard, there is a reasonable probability that at least one juror would have found sufficient mitigating circumstances to warrant life imprisonment rather than a death sentence. The state court decision to the contrary is both incorrect and unreasonable. It is based in part upon an unreasonable determination of facts regarding the uninvestigated mitigating evidence and it is the result of an unreasonable application of relevant federal law as determined by the Supreme Court. Accordingly, the Court should reconsider its prejudice analysis and amend its Order and Final Judgment to grant Vasquez's petition for habeas corpus.

Additionally, Petitioner seeks reconsideration of the Court's denial of his claims that he was denied the effective assistance of counsel due to appellate counsel's conflict of interest and due to trial counsel's failure to investigate and counter the state's evidence of sexual assault. Alternatively, with respect to this latter claim, Petitioner seeks reconsideration of the Court's denial of a certificate of appealability.

## ARGUMENT

**I.    To determine prejudice from counsel's failure to investigate mitigating evidence, the Court must evaluate how the undiscovered evidence, taken as a whole, would likely change the Jury's perspective of the defendant's moral culpability.**

The Court determined that Petitioner was not prejudiced by trial counsel's failure to investigate and present available mitigation evidence based on its conclusion that the undiscovered evidence of Richard's background "though terrible, does not reach the compelling level found sufficient to constitute prejudice by the Supreme Court" in other habeas cases. In reaching this conclusion the Court misapplies the standard for determining prejudice as articulated by the Supreme Court and Texas law in two ways. First, the Court assumes that the Supreme Court has set a defined level or degree of severity for mitigation evidence applicable to all ineffective assistance of counsel cases which must be surpassed for the uninvestigated mitigation evidence to be deemed prejudicial. Specifically, the Court compared the uninvestigated mitigation evidence in Vasquez's case with the mitigation evidence in *Rompilla v. Beard*, 545 U.S. 374 (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003); and *Williams v. Taylor*, 529 U.S. 362 (2000) and determined that "though terrible," the mitigation evidence here was not as "horrific" as the physical abuse and neglect suffered by the petitioners in those cases.[1]  However,

---

[1] Significantly, the Court did not attempt a corresponding comparison of the aggravating factors in those same cases, which are each far more "gruesome" than the details of the current case. *See, e.g., Rompilla*, 545 U.S. at 377-78 (petitioner had a significant history of felony convictions indicating the use or threat of violence, murdered a bar owner in the course of committing another felony, stabbed the victim repeatedly, tortured him and set his body on fire); *Wiggins*, 539 U.S. at 514 (27 year-old petitioner drowned a 77 year-old woman in her bathtub and ransacked and robbed her apartment); *Williams*, 529 U.S. at 367-68 (petitioner, who had been convicted of armed robbery and grand larceny, confessed to robbing and clubbing a man to death with a mattock who refused to lend him "a couple of dollars" and subsequently confessed to two separate violent assaults on elderly victims, one of which left the victim in a "vegetative state."); *see also id* at 418 (Rehnquist C.J. dissenting) (noting that petitioner had savagely beaten an elderly woman, stolen two cars, set fire to the city jail, stabbed a man during a robbery and confessed to having strong urges to choke other inmates and break a fellow prisoner's jaw). Here, although Vasquez (who was 18 at the time) did not immediately confess to hitting Miranda Lopez, he attempted to save her life by calling 911 and by performing first aid. (RR 34:59; 37:95-99, 102). Because of Vasquez's call, Miranda was transported to the hospital where she eventually died the following day. (RR 41: State's Ex. 45). Obviously, this type of cross-case comparison will inevitably be imprecise and incomplete, which is precisely why it should not be,

none of those cases, or any other Supreme Court cases, articulate any standardized "level found sufficient to constitute prejudice" or mandate such an apples to oranges comparison of the undiscovered mitigation evidence across separate cases.

To the contrary, *Strickland v. Washington*, 466 U.S. 668, 695 (1984) dictates that "in making this [prejudice] determination, a court hearing an ineffectiveness claim must consider the totality of *the evidence before the judge or jury*." (Emphasis added). The Supreme Court also repudiated a mechanical test for prejudice, recognizing that numerous case-specific factors will affect the decision.

> Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have an isolated, trivial effect. Moreover, a verdict of conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.

*Id.* at 695-96.

As *Rompilla* instructs, the proper inquiry is whether the undiscovered mitigation evidence in the case at hand "adds up to a mitigation case that bears no relation to the few naked pleas for mercy actually put before the jury" and whether "the undiscovered mitigating evidence, taken as a whole, might well have influenced the jury's appraisal of [the petitioner's] culpability." *See Rompilla*, 545 U.S. at 393 (internal quotations and citations omitted). The Supreme Court articulated a test that considers whether "the likelihood of a different result if the evidence had gone in is 'sufficient to undermine confidence in the outcome' actually reached at sentencing." *Rompilla*, 545 U.S. at 393 (quoting *Strickland*, 466 U.S. at 694 (1984)). This is a case-by-case

---

and in fact, as this Motion makes clear, is not the means to determine the prejudicial character of uninvestigated mitigation evidence.

inquiry that requires an assessment of the particular mitigation evidence in question in a given case and the effect of that evidence on the petitioner's moral culpability.

Second, the Court incorrectly analyzed the issue of prejudice from the omitted mitigation evidence by balancing the mitigation evidence against what the Court described as "gruesome" aggravating facts without considering the significant impact the mitigation evidence had on the Petitioner's moral culpability. Texas law does not call for a strict "balancing" of the mitigation evidence against the aggravating factors in a given case, as is called for in the capital punishment statutes of other states.[2]   Instead, at the time of Vasquez's trial, a Texas jury had to answer the following special issue related to mitigation evidence:

> Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

TEX. CRIM. PROC. CODE ANN. art. 37.071 § 2(e) (Vernon 1997).   This statute, rather than mandating a simple weighing of the aggravating verses mitigating factors in the case, requires a jury to consider how the mitigating evidence impacts the personal moral culpability of the defendant.[3]   Thus, applying the Texas statute (and in accordance with *Penry* and its progeny), an

---

[2] *Cf. Strickland*, 446 at 695 (applying Florida law and observing "[w]hen a defendant challenges a death sentence *such as the one at issue in this case*, the question is whether there is a reasonable probability that, absent the errors, the sentencer – including an appellate court, to the extent it independently reweighs the evidence – would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." (emphasis added)).

[3] The Fifth Circuit cases the Court cites in support of its prejudice analysis, were both tried before the 1991 amendments to Article 37.071 and thus did not apply the appropriate standard. *See Jones v. Johnson*, 171 F.3d 270, 276 n.19 (5th Cir. 1999)(applying the special issues from the pre-1991 sentencing statute); *Russell v. Lynaugh*, 892 F.2d 1205 (5th Cir. 1989)(conviction affirmed 1980). The same is true of the cases the Court relies upon to support its prejudice analysis respecting the uninvestigated evidence of mental impairment. *See Rector v. Johnson*, 120 F.3d 551 (5th Cir. 1997)(convicted in 1982); *Boyle v. Johnson*, 93 F.3d 180, 185

appellate court deciding the question of whether trial counsel's failure to investigate mitigation evidence was prejudicial must consider the extent that the omitted mitigation evidence would have informed the jury's appraisal of the petitioner's personal moral culpability, notwithstanding the severity of the aggravating evidence. *See Rompilla*, 545 U.S. at 393; *Penry*, 492 U.S. at 319-28. The Court did not conduct this analysis.

Finally, the Court gave undue deference to the state court's flawed finding on the issue of prejudice despite the Court's determinations that (1) the trial court's underlying fact finding on the issue of trial counsel's failure to investigate mitigating evidence was unreasonable and (2) that the state court's legal conclusion that there was no deficiency was an unreasonable application of federal law. The Court gave this unwarranted deference by incorrectly asserting that Vasquez must "demonstrate by *clear and convincing evidence* that the state court's finding on this point was unreasonable." (Emphasis added).

Even if the state court's mixed finding of fact and law on the issue of prejudice was entitled to deference, which it is not,[4] the Petitioner is not required to refute that finding by "clear

---

(5th Cir. 1996)(applying 1981 version of sentencing statute.) Prior to the 1991 amendments, the sentencing statute in capital cases did not include the third special issue expressly requiring the jury to consider the moral culpability of the defendant. Instead, the pre-1991 statute mandated that a death sentence be imposed if the jury found that the defendant committed a capital offense and answered yes to the issues of whether the defendant acted deliberately, would be a future danger to society, and (if applicable) acted unreasonably in response to provocation. *See* TEX. CRIM. PROC. CODE ANN. art. 37.071(b) (Vernon 1981 and Supp. 1989); *see also Penry*, 492 U.S. at 310 & 328 (reviewing the 1989 statute and holding that it deprived the jury the opportunity to express its "reasoned moral response" to mitigating evidence in rendering its sentencing decision).

[4] The state court's finding on the issue of whether trial counsel's failure to investigate and present mitigation evidence caused prejudice was undoubtedly based, in part, upon and to a large extent dictated by trial counsel's erroneous conclusion that "Vasquez's trial attorneys performed reasonably under the prevailing professional norms . . . and that they made reasonable efforts to discover all reasonably available mitigating evidence." *See* Court's Apx. A, Finding of Fact No. 20. Because the state court's underlying finding was based on a flawed analysis, the state court's

and convincing evidence."   The presumption of correctness set out in 28 U.S.C. § 2254(e)(1) applies only to *fact issues* determined by the state court.   Because the Court determined that the state court's underlying conclusion on the issue of trial counsel's failure to investigate evidence of mitigation involved an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1), there is no presumption of correctness for the state court's mixed finding of fact on the issue of the resulting prejudice.   Additionally, the state court failed to conduct the very same prejudice analysis required by the Supreme Court that Petitioner observes was omitted from the Court's memorandum opinion, namely an evaluation of the impact the undiscovered mitigating evidence likely would have had on the jury's perspective of Petitioner's moral culpability for the crime.   Accordingly, the state court's prejudice determination is based on an "unreasonable application of federal law."   28 U.S.C. § 2254(d)(1).

As discussed more fully in Section III below, the appropriate analysis of the mitigating evidence, taken as a whole, including an analysis of the impact of the undiscovered mitigation evidence on the jury's perspective of the Petitioner's moral culpability, demonstrates that Petitioner met his burden on the issue of prejudice.

**II.      The Court applied the wrong standard for determining prejudice resulting from counsel's failure to discover mitigating evidence of mental impairment.**

Regarding evidence of Vasquez's mental deficiencies, the Court incorrectly framed the issue of trial counsel's failure to *investigate* this mitigation evidence as a failure to *present* evidence.   The Court then applied an outdated and incorrect standard for analysis of the prejudice Vasquez suffered as a result that failure to investigate.   Citing the language from Fifth Circuit cases that were tried before *Penry v. Lynaugh*, 109 S.Ct. 2934 (1989) and the 1991 amendments

---

subsequent finding regarding prejudice was likewise flawed and not entitled to any deference by this Court.

to Article 37.071 (see note 3 *supra*), the Court incorrectly focused on the "double edged" nature of the undiscovered mitigation evidence and overlooked the significant mitigating impact of this evidence, particularly as it directly relates to, and in-part explains, the Petitioner's actions in carrying out the crime.

      a.      **Vasquez seeks relief for trial counsel's failure to *investigate* mitigation evidence of his mental impairment.**

It is clear from both Vasquez's petition and his response to the State's summary judgment motion that one of the bases for Vasquez's ineffective assistance of counsel claim is the fact that trial counsel failed to conduct a proper investigation of Vasquez's mental deficiencies. *See e.g.*, Petition pp. 24-30, Response pp. 30-41. As a result of trial counsel's failure to investigate, including their failure to conduct the tests for brain dysfunction expressly prescribed by their experts Dr. Estrada and Dr. Bonikowski, trial counsel *never knew* the full extent of Vasquez's mental impairments, including post traumatic stress disorder, attention deficit disorder, poly-substance dependence, fetal alcohol syndrome, brain dysfunction, learning disabilities, and a borderline IQ. Because trial counsel did not investigate and did not know the extent of Vasquez's mental impairments trial counsel were never in a position to make an informed decision as to whether or not to *present* such evidence. Accordingly, the Court's characterization of this claim as a failure to present mitigating metal deficiency evidence misses the mark.

This distinction is significant because it changes the standard by which trial counsel's performance is to be evaluated. For example, if trial counsel had conducted the necessary investigation and made an informed decision not to present the mitigating evidence of mental impairment due to its double-edged nature, that decision would be "virtually unchallengeable" and entitled to great deference by the Court. *Strickland*, 466 U.S. at 690-91. Such are the facts

in *Martinez v. Quarterman*, 481 F.3d 249 (5th Cir. 2007) cited by the Court.[5]  However, in this case, trial counsel failed to conduct the necessary investigation of Petitioner's mental impairment so the Court need not afford any deference to trial counsel's uninformed decision.  *Lockett v. Anderson*, 230 F.3d 695, 714 (5th Cir. 2000)("*Strickland* does not require any deference to decisions of counsel that are uninformed by an adequate investigation into the controlling facts and law.").

> **b.**     **The Court's finding of no prejudice based on the double-edged nature of mental impairment evidence misapplies Supreme Court precedent and Texas law.**

Without making any determination as to whether counsel should have performed the additional investigation of Vasquez's mental impairment, or whether the state court's finding in this regard was unreasonable, the Court skipped directly to the question of whether the failure to investigate the mental impairment evidence prejudiced the outcome of the case and concluded that it did not.  The crux of the Court's analysis, however, stems from the Court's view that "[e]vidence of mental and neurological conditions is double-edged."  The Court assumes that the double-edged nature of the mental impairment evidence would effectively cause the aggravating aspects of the evidence to cancel out any potential mitigating effects.  Yet this cannot be the

---

[5] *Martinez* makes the following factual and legal observations:

> [C]ounsel knew that Dr. Pearlman believed that Martinez suffered from a mental disorder which made him prone to aggressive behavior and that Martinez committed the murders during a seizure.  Therefore, this case is unlike *Lockett v. Anderson*, in which we found that counsel provided ineffective assistance where counsel failed to discover evidence of brain abnormalities because counsel did not follow up on evidence which suggested psychological problems. 230 F.3d 695 (5th Cir. 2000).  Given all of the damaging information contained in Dr. Pearlman's report, counsel made a reasonable professional judgment to limit their investigation into TLE as mitigating evidence.

*Martinez*, 481 F.3d at 256.

standard for determining prejudice.  If the mere fact that mental deficiency evidence is "double edged" could excuse trial counsel's failure to conduct an examination of the petitioner's mental health (or at least impair a petitioner's efforts to prove prejudice from trial counsel's failure to do so), it would be virtually impossible to challenge defense counsel's failure to investigate mental impairment evidence.

The Court's reasoning conflicts with the Supreme Court's repeated acknowledgment that despite the potential aggravating effects of mental impairment evidence, such evidence can have a sufficient effect in reducing a defendant's moral culpability for his deliberate actions to cause a jury not to impose the death penalty.  For example, *Penry v. Lynaugh* reasoned as follows:

> A rational juror at the penalty phase of the trial could have concluded, in light of Penry's confession, that he deliberately killed Pamela Carpenter to escape detection.  Because Penry was mentally retarded, however, and thus less able than a normal adult to control his impulses or to evaluate the consequences of his conduct, and because of his history of childhood abuse, that same juror could also conclude that Penry was less morally "culpable than defendants who have no such excuse," but who acted "deliberately" as that term is commonly understood.

*Penry*, 492 U.S. at 322-323; *see also Tennard v. Dretke*, 542 U.S. 274, (2004)(("Evidence of significantly impaired intellectual functioning is obviously evidence that might serve as a basis for a sentence less than death. . . . Impaired intellectual functioning has mitigating dimension *beyond the impact it has on the individual's ability to act deliberately*." (emphasis added and internal quotations omitted)); *Wiggins*, 539 U.S. at 535 (petitioner's "diminished mental capacities, further augment his mitigation case").

The Fifth Circuit's decision in *Lockett v. Anderson* provides an appropriate model for how this test for prejudice is applied in a case involving undiscovered mental impairment evidence.  In fact, the undiscovered mitigation evidence in this case is very similar in many respects to the undiscovered mental impairment evidence in *Lockett*.  There, despite the

"unforgivable viciousness" of the calculated ambush, kidnapping, multiple shootings and execution of an innocent couple committed by the petitioner and despite the double-edged nature of the mental impairment evidence, the Fifth Circuit considered the effect of the mitigating evidence on the jury's view of the defendant's moral culpability and determined that the trial attorneys' failure to investigate evidence of the petitioner's brain dysfunction prejudiced the petitioner's defense. *See Lockett*, 230 F.3d. at 715-16. The court reasoned as follows:

> If the medical opinion testimony in this case – that Lockett suffered from some organic brain disorder that tended to explain his violent conduct and made him less able to control his behavior than a normal person – had been presented to the jury, we think a reasonable juror could have found that his particular mental condition, which resulted from no fault of his own, made him less morally culpable for his cruel and senseless crime.

*Id.* at 716.

As the court did in *Lockett*, the question this Court must analyze is whether, despite the potential aggravating factors, the mitigating evidence sufficiently reduced the moral culpability of the Petitioner such that at least one juror would impose a sentence less than death. [6]

**III.    Vasquez met his burden to demonstrate prejudice.**

When viewed under the appropriate standard of review, it is reasonably probable that, but for trial counsel's failure to investigate mitigating evidence of Vasquez's traumatic and disturbing childhood and significant and relevant mental impairment, the result of the sentencing proceeding would have been different. This is true because the undiscovered mitigation evidence provides a fundamentally different perspective of Vasquez's moral culpability for the murder of Miranda Lopez than trial counsel presented to the jury. As a result of trial counsel's failure to perform the necessary investigation regarding Vasquez's childhood and family life, the

---

[6] *See id.*; *see also* TEX. CRIM. PROC. CODE ANN. art. 37.071 §2(f) (requiring the jury be unanimous before answering negatively to the third special issue – whether there are sufficient mitigating circumstances to warrant a life sentence).

jury never knew about Vasquez's family's extensive history of hard drug abuse, crime, depression, and violent death. As the Court recognized, the jury was also not informed that Vasquez was exposed to and initiated into these profoundly negative influences and addictions during his formative years by multiple individuals he cared about and looked up to as role models, including his father and mother.

This available but uninvestigated social history relates directly to and explains the cause of Richard's own heroin addiction, criminal behavior, and depression – the very things that contributed to Richard's attitude and behavior on the day Miranda Lopez was attacked. Instead of showing Vasquez as a bad actor who, exercising his own moral agency, chose to abuse drugs and commit crimes, this evidence would likely have informed the jury's perspective of Vasquez as a product of years of neglect and pervasive negative influences that were virtually impossible for a youth in his very unfortunate circumstances to avoid. This is precisely the type of perspective-altering mitigation evidence that that if discovered "might well have influenced the jury's appraisal of [the Petitioner's] culpability." *See Rompilla*, 545 U.S. at 393.

The undiscovered evidence of Vasquez's mental impairment also would have dramatically shifted the jury's perspective of Vasquez's moral culpability, especially if it was presented together with the evidence of Vasquez's traumatic social history. This mental impairment evidence, including Dr. Weinstein's diagnosis that Vasquez's brain dysfunction affects the frontal lobes of his brain causing problems with impulse control, problems with abstract reasoning, and problems with his ability to plan and regulate his behavior and emotions, is powerful, but not because it is "horrific" in nature such that it offsets the "gruesome" nature of Vasquez's offense. The fact that Vasquez has a biological condition causing him to have difficulty controlling his behavior and emotions is compelling because of its strong nexus to

Vasquez's impulsive and irrational actions toward the victim in this case. It is also powerful because it significantly diminishes Vasquez's moral culpability for his crime. The Court itself acknowledged that "this evaluation certainly helps explain Vasquez's violent outburst against Miranda."

Because the significant undiscovered mitigation evidence of Vasquez's social history and mental impairment relates directly to his motivation and actions to commit the crime, it is reasonably probable that if these mitigating facts had been investigated and presented to the jury during the sentencing phase of the trial, at least one juror may have determined that Vasquez's culpability was sufficiently diminished that a life sentence is the appropriate punishment.

<b>PRAYER</b>

Petitioner asks the Court to grant this Motion for Reconsideration and alter or amend its March 28, 2008 Memorandum and Order as well as its Final Judgment to deny Respondent Quarterman's Motion for Summary Judgment and grant Petitioner's Petition for Writ of Habeas Corpus. Alternatively, Petitioner seeks reconsideration of the Court's denial of a certificate of appealability for its claim of ineffective assistance based on trial counsel's failure to investigate and counter the state's evidence of sexual assault.

Respectfully submitted,

BRACEWELL & GIULIANI LLP

By: /s Andrew M. Edison
      Andrew M. Edison
      State Bar No. 00790029

      Eric B. Storm
      State Bar No. 24033244

      711 Louisiana Street, Suite 2300
      Houston, Texas 77002
      (713) 221-1371 (Telephone)
      (713) 221-2144 (Facsimile)

ATTORNEYS FOR PETITIONER RICHARD
VASQUEZ

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Motion for Reconsideration was served on the Attorney General for the State of Texas, Counsel for Respondent, by mailing the Petition via first class mail RRR on 11th day of April, 2008 to the following address:

> Mr. Baxter R. Morgan
> Office of the Attorney General
> Assistant Attorney General
> Post Conviction Litigation Division
> P.O. Box 12548
> Austin, TX 78711-2548

/s Andrew M. Edison
Andrew M. Edison